UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON


CIVIL ACTION NO. 10-288-GWU


GERALD FELTNER,                                                        PLAINTIFF,


VS.                            **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.


**INTRODUCTION**

    The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

**APPLICABLE LAW**

    The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

    1.     Is the claimant currently engaged in substantial gainful activity?
           If so, the claimant is not disabled and the claim is denied.

    2.     If the claimant is not currently engaged in substantial gainful
           activity, does he have any "severe" impairment or combination
           of impairments--i.e., any impairments significantly limiting his
           physical or mental ability to do basic work activities?  If not, a
           finding of non-disability is made and the claim is denied.

1

3.      The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

        Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

and must take into account whatever in the record fairly detracts from its weight.

Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

4

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Gerald Feltner, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of Parkinson's disease, right shoulder pain and weakness status post acromioplasty and rotator cuff repair, right carpal tunnel syndrome status post release surgery, a major depressive disorder, and panic attacks.  (Tr. 15).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Feltner retained the residual functional capacity to perform a significant number of jobs existing in the economy,

and therefore was not entitled to benefits.  (Tr. 20-25).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 46, eleventh grade education, and work experience as a meat packer, factory laborer and machine operator could perform any jobs if he were capable of lifting 20 pounds occasionally and 10 pounds frequently with the ability to sit, stand, and walk up to six hours each in an eight-hour day, and also had the following non-exertional restrictions.  He: (1) could not climb ladders, ropes, or scaffolds, or perform overhead work with the right arm; (2) could occasionally balance and crawl; (3) could occasionally reach, handle, or finger with the right hand; (4) could have no exposure to concentrated vibration or industrial hazards; (5) required entry level work with simple, repetitive procedures, no frequent changes of work routines, no requirement for detailed or complex problem solving, independent planning, or the setting of goals; and (6) should work in an object-oriented environment with only occasional and casual contact with the general public not requiring extended conversation, coordinated activities, dispute resolution, "and so forth."  (Tr. 53).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 53-4).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.  There is an additional issue in that the plaintiff's Date Last Insured (DLI) for the purposes of receiving DIB was December 31, 2008, meaning that he had to show disability prior to this date in order to be entitled to benefits.  His SSI application is not affected.

The plaintiff alleged disability beginning August 6, 2007 due to Parkinson's disease, a right shoulder injury, back problems, a bipolar disorder, and carpal tunnel syndrome.  (Tr. 150, 158).  He had stopped working in approximately January, 2007 and received unemployment insurance until July 31, 2007.  (Tr. 34, 36, 158).  He selected his onset date because it was the date he was diagnosed with Parkinson's disease.  (Tr. 36, 158).

The central legal issue on appeal is the weight given by the ALJ to the opinion of the plaintiff's treating physician, Dr. Luis Pagani, a neurologist.  Dr. Pagani submitted some office notes concerning treatment of a tremor affecting the plaintiff's head and right arm.  (Tr. 269-70, 432-45).  He submitted a letter to the Kentucky Department of Human Services dated November 29, 2007 requesting a medical card in order to continue prescribing medications and "investigating his problems."  (Tr. 299).  He opined that Mr. Feltner was "totally disabled for gainful employment and is expected to continue to be so for the next 12 months."  (Id.).

Subsequently, on November 20, 2009, Dr. Pagani answered a "physical residual functional capacity questionnaire" and stated that he had seen the plaintiff every two or three months since 2003. (Tr. 426). His diagnoses were cervical pain, shoulder pain, Parkinson's, anxiety, and lumbar disc displacement. He had low back pain and hand tremors daily, as well as neck and shoulder pain. His pain medication caused drowsiness and anti-Parkinson's medications caused nausea. (Id.). He also had anxiety. (Tr. 427). He stated his patient was not a malingerer. In terms of functional restrictions, he felt that pain would constantly interfere with Mr. Feltner's concentration and he was incapable of even low stress jobs. (Id.). He could lift 10 pounds occasionally only with the left arm, could sit, stand, and walk about two hours each, would need the option of sitting or standing, and would need unscheduled breaks lasting 15 minutes every hour. (Tr. 428). He could occasionally look up and down, turn his head left or right, and hold his head in a static position. (Tr. 429). He could not grasp, twist, or turn objects, perform fine manipulations, or reach overhead with his right arm. (Id.). With his left arm, he could grasp/twist/turn objects, perform fine manipulations, and reach overhead ten percent of the time. He was expected to miss more than four days of work per month. (Id.).

The ALJ summarized Dr. Pagani's restrictions in his decision without comment. (Tr. 16-17). He largely accepted the opinions of state agency non-

examining reviewers who completed their reports prior to the receipt of Dr. Pagani's functional capacity questionnaire.  (Tr. 22).  He rejected the opinion of a one-time examining physician, Dr. Keith D. Wilkey, who also limited the plaintiff to sedentary level exertion and opined he was completely and totally disabled as well as the opinion of Dr. Joel Krelein that Mr. Feltner was unable to work because of bilateral carpal tunnel syndrome.[1]

The ALJ did not return to Dr. Pagani's specific limitations, except to discuss the earlier letter requesting a medical card and opining that he was totally disabled for a period of 12 months.  The disability opinion was rejected because the ALJ felt it was "inconsistent with the objective medical evidence of record, the claimant's activities of daily living, physical examination and consultative examination" and because "the opinion of total disability is reserved for the Commissioner."  (Tr. 23).

The opinion of a treating source is entitled to controlling weight under 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) where it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record.  As the plaintiff points out, if the treating source opinion is not given controlling weight, the regulations as well as Social Security Ruling (SSR) 09-8p require the ALJ to proceed with a balancing test

---

[1]The ALJ noted that the plaintiff subsequently underwent carpal tunnel release surgery, and discounted Dr. Krelein on that basis.  (Tr. 23).

in order to determine what weight to give it.  These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source.  Id.  The Sixth Circuit has repeatedly ruled that the administrative decisions must include "good reasons" for the weight given the treating source opinion, and the reasons must be sufficiently specific to make clear to subsequent reviewers the reasons for the weight given.  Wilson v. Commissioner of Social Security, 378 F.3d 541, 546 (6th Cir. 2004); SSR 96-2p, p. 12.

In the present case, it is clear that the ALJ did not conduct any balancing of factors or assign a specific weight to Dr. Pagani's specific assessment.  The only rationale given was for rejecting the earlier, conclusory opinion of total disability, even though the date of the specific assessment was cited. (Tr. 23).  Therefore, the decision clearly failed to assign a weight or provide any good reasons for disregarding Dr. Pagani's assessment, which constitutes clear error.  Cole v. Commissioner of Social Security, 2011 WL 2745792 (6th Cir. July 15, 2011) (slip op. at 8-9); Blakley v. Commissioner of Social Security, 581 F.3d 399, 408 (6th Cir. 2009).  "We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not

comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." Hensley v. Commissioner of Social Security, 573 F.3d 263, 267 (6th Cir. 2009), citing 20 C.F.R. § 404.1527(d)(2).

Nor is this a case where the treating source opinion is so patently deficient that the Commissioner could not possibly credit it. Wilson, 378 F.3d at 574. Dr. Pagani's opinion is fairly consistent with that of Dr. Wilkey, the previously mentioned examining source. (Tr. 456-61). A previous examiner, Dr. Ninad Karandikar, reported that his examination was unreliable and restrictions could not be determined but also noted that the plaintiff appeared to be in severe distress. (Tr. 274-8). It neither supports or clearly refutes the treating source opinion.

As the plaintiff points out, moreover, the ALJ's recitation of Mr. Feltner's daily activities and subjective complaints is problematical. The ALJ stated that Mr. Feltner "attends to his personal hygiene independently, prepares simple meals such as TV dinners or sandwiches, drives, listens to the radio, watches television, watches movies with his granddaughter, takes out small bags of trash, shops with a friend, pays bills, works puzzles, walks outside, talks on the phone to friends, and visits with his daughters, granddaughter, and parents." (Tr. 22). However, the plaintiff stated that taking care of his personal needs took a long time because he had difficulty standing and reaching which caused problems with bathing, shaving,

and dressing.  (Tr. 185).  Most of his shopping was done by relatives.  (Tr. 186).  He watched television, but noticed his head shaking.  (Tr. 36).

The Sixth Circuit has also been critical of evaluations of credibility that exaggerate the importance of minor life activities and mischaracterize the scope of daily activities.  Rogers v. Commissioner of Social Security, 486 F.3d 234, 247-49 (6th Cir. 2007), citing SSR 96-7p, p. 4.  In Rogers, the court noted that the plaintiff's daily functions such as driving, cleaning her apartment, caring for two dogs, doing laundry, reading, doing stretching exercises, and watching the news were not "comparable to typical work activities."  Id.  In the present case, the plaintiff testified that he had trouble putting on his shoes and socks, that he had to use his left hand combing his hair and brushing his teeth and that he had moved into a camper because he could not go up and down the steps at his mother's house.  (Tr. 42-3, 47-48).  He would shop as quickly as possible and then go home to lie down.  (Tr. 47).  Therefore, the ALJ's summary of daily activities, as described by the plaintiff, is somewhat misleading.

Moreover, the ALJ appears to have cited the plaintiff's receipt of Worker's Compensation benefits as suggestive of lack of credibility.  (Tr. 22).  The Commissioner cites Ky. Rev. Stat. § 341.350 as establishing that a claimant must certify that he is ready, willing, and available to work in order to receive Worker's Compensation benefits, but this statute refers to underlined unemployment benefits.  While

12

receipt of Worker's Compensation benefits does not establish eligibility under the Social Security program, it does not diminish a claimant's credibility, either.

For all the above reasons, the court finds that the administrative decision is not supported by substantial evidence.  An order remanding the case for further proceedings will be entered simultaneously with this opinion.

This the 22nd day of September, 2011.

**Signed By:**

*G. Wix Unthank*

**United States Senior Judge**